UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
HUDSON HERITAGE FEDERAL                 Case No.: 7:17-cv-2930(VLB)(PED)
CREDIT UNION,
                      Plaintiff,     :    **AMENDED COMPLAINT**
      - against -         :
                            :
CUMIS INSURANCE SOCIETY, INC. d/b/a   :   *Plaintiff Demands*
CUNA MUTUAL GROUP,             :   *a Trial By Jury*
                            :
                 Defendant.     :
------------------------------------------------------------X

The Plaintiff, HUDSON HERITAGE FEDERAL CREDIT UNION ("Credit Union" or

"HHFCU"), by and through its attorneys, Mitchell Pollack & Associates PLLC, as and for its

Amended Complaint against the Defendant, CUMIS Insurance Society, Inc. d/b/a CUNA

MUTUAL GROUP ("CUMIS"), states and alleges as follows:

### NATURE OF ACTION

1.    This action involves a breach of contract arising under a fidelity bond issued by

CUMIS ("Bond") and pertaining to various losses ("Losses") sustained by the Plaintiff due to a

systematic and prolonged loan fraud committed by several Credit Union members.

2.    CUMIS breached the contract with HHFCU by denying the Credit Union's

insurance claim and refusing to cover the Plaintiff's Losses under the Bond.

3.    As a result of CUMIS's refusal to pay the insurance proceeds due and owing to

HHFCU, the Credit Union now seeks, by way of this action, monetary damages for CUMIS's

breach of contract and negligence.  The Credit Union also seeks a declaratory judgment that

CUMIS is obligated to provide coverage to HHFCU under, *inter alia*, the Bond's "Forgery or

Alteration" provision for the full amount of HHFCU Losses, together with prejudgment interest

and any and all other appropriate legal and equitable relief pursuant to applicable state and

federal law that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 insofar as the matter is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

5.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in the Southern District of New York.

## THE PARTIES

6.     The Plaintiff is a not-for-profit financial cooperative chartered under the Federal Credit Union Act with its principal place of business at 25 Rykowski Lane, Middletown, NY.

7.     Upon information and belief, CUMIS is an insurance company incorporated under the laws of the State of Iowa, with its principal place of business at 5910 Mineral Point Road, Madison, Wisconsin.

## FACTUAL BACKGROUND

**The CUMIS Bond:**

8.     HHFCU purchased a Bond from CUMIS with Policy Number 001635 / Contract No. 031-1309-1.  The Bond had an effective date of May 21, 2016 and represented the renewal of an annual prepaid policy that is and was continuous until canceled.

9.     The Plaintiff paid CUMIS a significant monetary premium for the insurance protection covered under the Bond for the annual period of May 21, 2016 through May 21, 2017.

10.     The Bond applies to all "covered loss[es] discovered by [HHFCU] while this Bond is in effect."

11.     "Words and phrases appearing in quotation marks in [the] Bond are defined under the Definitions section of [the] Bond."

**The "Forgery Or Alteration" Provision:**

12.     HHFCU intended to secure coverage under the Bond for losses that occurred as a result of the fabrication, forgery or alteration of a document that is presented by a member in an effort to obtain a loan or other service provided by the Credit Union.

13.     Under the "Forgery Or Alteration" coverage provided by the Bond, CUMIS promised to pay the Credit Union for losses "resulting directly from the 'forgery' or alteration of an 'instrument.'"

14.     At the time the Bond was secured, HHFCU intended and believed that Section S of the Bond—the "Forgery Or Alteration" provision—covered the improper fabrication or alteration of any document/instrument presented to the HHFCU in a form customarily relied upon by a Credit Union, in the regular course of business, to prove ownership of collateral in connection with the procurement of a loan.

15.     Under the Bond, "forgery" is defined as:

> …affixing the handwritten signature, or a reproduction of the handwritten signature, of another natural person without authorization or ratification, and with the intent to deceive.

> A signature written on an electronic pad, which captures the signature for purposes of creating an electronic digitized image of a handwritten signature, is treated the same as a handwritten signature.  Any other form of "electronic signature" or digital signature is not treated as a handwritten signature, or a reproduction of a handwritten signature.

> However, a signature that consists in whole or in part of one's own name signed with or without authority, in any capacity for any purpose, is not a "forgery."

16.     Under the Bond, "instrument" is defined as:

an original: mortgage, "document of title," deed, contract for deed, deed of trust, promissory note, "security agreement," money order, certificate of deposit, "certificated securities," bond coupon, interim receipt for a security, assignment of mortgage, check, draft, share draft, bill of exchange, "withdrawal order," "letter of credit," "acceptance," passbook held as collateral, or "certificate of origin or title" ….

17.    The Bond does not define the terms, "resulting," "directly" or "alteration".

18.    These terms and phrases in the "Forgery Or Alteration" provision of the Bond are vague and ambiguous.

**The Glendale Jenkins Loss:**

19.    On or about April 15, 2016, Glendale Tyrone Jenkins ("Jenkins") applied for membership with the Credit Union and submitted an application for a loan to purchase a used 2012 BMW, Vehicle Identification Number ("VIN") xxxxxxxxxxxxx5167 (the "Jenkins Loan").

20.    According to the identification documents Jenkins provided to the Credit Union with the loan application, Jenkins was purportedly living at 60 Montgomery Street, Poughkeepsie, New York 12601.

21.    To evidence the Poughkeepsie, New York address, Jenkins provided the Credit Union with a Verizon utility bill addressed to him at 60 Montgomery Street, Poughkeepsie, NY.

22.    Jenkins advised the Credit Union that he was purchasing the 2012 BMW from Kelly Ness residing at 635 Beach 69th Street, Arverne, New York, 12601.

23.    In accordance with the Credit Union's regular course of business, HHFCU requested, and was provided with, proof of the New York State Department of Motor Vehicles ("DMV") title evidencing that Kelly Ness was the owner of the vehicle ("Title #1").

24.    The custom and practice in the financial industry is for the borrower/potential purchaser to submit a photocopy/digital and/or electronic version of an original DMV title to the

financial institution to evidence ownership of the collateral.

25.    A DMV title is an "instrument" as defined in the Bond.

26.    In reliance upon Title #1 and Jenkins' application documents, the Credit Union approved the Jenkins Loan.

27.    In reliance upon Title #1 and the Jenkins' application documents, the Credit Union issued payment in the amount of $15,290.00 with the expectation of securing an interest in the 2012 BMW.

28.    After the Jenkins Loan went into default, the Credit Union performed a search under both the VIN number on Title #1 and the seller's name.

29.    The Credit Union's investigation revealed that the 2012 BMW was not registered or recorded to the purported seller, Kelly Ness.

30.    The official records from the DMV reflected that title to the 2012 BMW was actually vested in an individual known as Kevin Gunn whose residence address was also listed as 635 Beach 69th Street, Arverne, New York 12601.

31.    Upon information and belief, Title #1 was an altered version of an original and genuine DMV instrument.

32.    Upon information and belief, the documents submitted with Jenkins' loan application to evidence his residence address were fabricated and/or altered.

33.    Upon information and belief, Jenkins utilized fabricated documents and altered an original DMV title instrument to secure the Jenkins Loan from the Credit Union (the "Jenkins Loss").

34.    The use of an altered DMV title instrument induced the Credit Union to approve the Jenkins Loan and was the direct and proximate cause of the Jenkins Loss.

35.     The Jenkins Loan was made in reliance upon an altered DMV title instrument and, thus, the Credit Union sustained losses "resulting directly from the 'forgery' or alteration of an 'instrument'" under the Bond.

36.     Upon information and belief, the Jenkins Loss resulted directly from the alteration of an original and genuine DMV title instrument and is covered under the Section S - Forgery Or Alteration - provision of the subject Bond.

37.     The damages sustained by the Credit Union as a result of the Jenkins Loss have yet to be fully ascertained and are to be determined at trial; however, they are in excess of $15,290.00 plus interest and the costs and disbursements of this action.

**The Ernst R. Gracia Loss:**

38.     On or about May 25, 2016, Ernst R. Gracia ("Gracia") applied for membership with the Credit Union and submitted an application for a loan to purchase a used 2007 Bentley VIN xxxxxxxxxxxxx1988 (the "Gracia Loan").

39.     According to the identification documents Gracia provided to the Credit Union with the loan application, Gracia was purportedly living at 28 Corlies Avenue, Poughkeepsie, New York 12601.

40.     To evidence the Poughkeepsie, New York address, Gracia provided the Credit Union with coverage documentation from GEICO Insurance Company and an ADP earnings statement addressed to him at 28 Corlies Avenue, Poughkeepsie, NY.

41.     Gracia advised the Credit Union that he was purchasing the 2007 Bentley from Eugene Jenkins residing at 635 Beach 69th Street, Arverne, New York, 11692.

42.     In accordance with the Credit Union's regular course of business, HHFCU requested, and was provided with, proof of the DMV title evidencing that Eugene Jenkins was

the owner of the vehicle ("Title #2").

43.    This DMV title was an "instrument" as defined in the Bond.

44.    In reliance upon Title #2 and Gracia's application documents, the Credit Union approved the Gracia Loan.

45.    In reliance upon Title #2 and Gracia's application documents, the Credit Union issued payment in the amount of $59,295.00 with the expectation of securing an interest in the 2007 Bentley.

46.    After the Gracia Loan went into default, the Credit Union performed a search under both the VIN number on Title #2 and the seller's name.

47.    The Credit Union's investigation revealed that the 2007 Bentley was not registered or recorded to the purported seller, Eugene Jenkins.

48.    The Credit Union's investigation revealed that Eugene Jenkins is a relative of Glendale Jenkins, an individual involved in all three of the subject transactions.

49.    The official records from the DMV evidenced that title to the 2007 Bentley was actually vested in a company known as CLLSN SVCCESS Corp. whose principal place of business is listed as 4398 Park Avenue, Bronx, New York 10457.

50.    Upon information and belief, Title #2 was an altered version of an original and genuine DMV title instrument.

51.    Upon information and belief, the documents submitted with Gracia's loan application to evidence his residence address were fabricated and/or altered.

52.    Upon information and belief, Gracia utilized fabricated documents and altered an original DMV title instrument to secure the Gracia Loan from the Credit Union (the "Gracia Loss").

53.     The use of an altered DMV title instrument induced the Credit Union to approve the Gracia Loan and was the direct and proximate cause of the Gracia Loss.

54.     The Gracia Loan was made in reliance upon an altered DMV title instrument and, thus, the Credit Union sustained losses "resulting directly from the 'forgery' or alteration of an 'instrument'" under the Bond.

55.     Upon information and belief, the Gracia Loss resulted directly from the alteration of an original and genuine DMV title instrument and is covered under the Section S - Forgery Or Alteration - provision of the subject Bond.

56.     The damages sustained by the Credit Union as a result of the Gracia Loss have yet to be fully ascertained and are to be determined at trial; however, they are in excess of $59,295.00 plus interest and the costs and disbursements of this action.

**The Erin Larkin Loss:**

57.     On or about June 11, 2016, Erin Larkin ("Larkin") applied for membership with the Credit Union and submitted an application for a loan to purchase a used 2014 BMW, VIN xxxxxxxxxxxxx1685 (the "Larkin Loan").

58.     According to the identification documents Larkin provided to the Credit Union with the loan application, Larkin was purportedly living at 104 Winnikee Avenue, Poughkeepsie, New York 12601.

59.     To evidence the Poughkeepsie, New York address, Larkin provided the Credit Union with coverage documentation from GEICO Insurance Company addressed to her at 104 Winnikee Avenue, Poughkeepsie, NY.

60.     Larkin advised the Credit Union that she was purchasing the 2014 BMW from Glendale Jenkins residing at 635 Beach 69th Street, Arverne, New York 12601.

8

61.     In accordance with the Credit Union's regular course of business, HHFCU requested, and was provided with, proof of the DMV title evidencing that Glendale Jenkins was the owner of the vehicle ("Title #3").

62.     This DMV title was an "instrument" as defined in the Bond.

63.     In reliance upon Title #3 and Larkin's application documents, the Credit Union approved the Larkin Loan.

64.     In reliance upon Title #3 and the Larkin application documents, the Credit Union issued payment in the amount of $60,294.00 with the expectation of securing an interest in the 2014 BMW.

65.     After the Larkin Loan went into default, the Credit Union performed a search under both the VIN number on Title #3 and the seller's name.

66.     The Credit Union's investigation revealed that the 2014 BMW was not registered or recorded to the purported seller, Glendale Jenkins.

67.     The official records from the DMV evidenced that title to the 2014 BMW was actually vested in an individual known as Svetlana Reznikova whose residence address was listed as 3051 Ocean Avenue, Apt. #D5, Brooklyn, New York 11235.

68.     The Credit Union's investigation revealed that Glendale Jenkins never owned a vehicle associated with this VIN.

69.     Upon information and belief, Title #3 was an altered version of an original and genuine DMV instrument.

70.     Upon information and belief, the documents submitted with Larkin's loan application to evidence her residence address were fabricated and/or altered.

71.     Upon information and belief, Larkin utilized fabricated documents and altered an

9

original DMV title instrument to secure the Larkin Loan from the Credit Union (the "Larkin Loss").

72.     The use of an altered DMV title instrument induced the Credit Union to approve the Larkin Loan and was the direct and proximate cause of the Larkin Loss.

73.     The Larkin Loan was made in reliance upon an altered DMV title instrument and, thus, the Credit Union sustained losses "resulting directly from the 'forgery' or alteration of an 'instrument'" under the Bond.

74.     Upon information and belief, the Larkin Loss resulted directly from the alteration of an original DMV title instrument and is covered under the Section S - Forgery Or Alteration - provision of the subject Bond.

75.     The damages sustained by the Credit Union as a result of the Larkin Loss have yet to be fully ascertained and are to be determined at trial; however, they are in excess of $60,294.00 plus interest and the costs and disbursements of this action.

**Discovering the Poughkeepsie Loan Fraud Ring:**

76.     After the above mentioned loans went into default, the Credit Union discovered that it had been the victim of a loan fraud ring (the "Loan Fraud").

77.     Each of the borrowers and sellers all appeared to be connected, in some fashion, and were working in concert to defraud HHFCU, through the use of altered documents.

78.     The altered DMV titles provided to the Credit Union each reflect ownership by three different sellers; yet, Title #1, Title #2 and Title #3 all display the same address at 635 Beach 69th Street, Arverne, New York 12601.

79.     The use of the same address, by multiple individuals, in the above transactions suggests that the parties involved were working together to defraud the Credit Union through

the use of altered documents.

80.     The three Loan Fraud members each provided proof of a residence address in Poughkeepsie, New York.

81.     The three Loan Fraud members each had a connection to Glendale Jenkins.

82.     Unbeknownst to the Credit Union, the three Loan Fraud members were profiting from the use of altered documents, including but not limited to altered DMV title instruments.

83.     The various connections between the three Loan Fraud members evidences that they were working together to defraud the Credit Union.

84.     The three Loan Fraud members use of altered instruments caused the Credit Union to sustain damages in an amount to be determined at trial but not less than $134,879.00.

85.     The Credit Union was informed and led to believe by CUMIS that it had purchased insurance to cover losses sustained by virtue of fabricated, forged or altered instruments.

**CUMIS Denies HHFCU Coverage for the Loan Fraud Losses:**

86.     On or about July 22, 2016, HHFCU submitted a Proof of Loss claim to CUMIS with respect to the Losses incurred directly as a result of the alteration of DMV Title #1 and Title #2, totaling $74,58500 in damages.

87.     The claim was assigned Claim Number B1028914 (the "Claim").

88.     The Credit Union ultimately supplemented the Claim once it discovered the Larkin Losses attributed to altered DMV Title #3.

89.     HHFCU has paid its premiums and complied with all of its obligations under the Bond, including fully cooperating with CUMIS in its investigation of the Loan Fraud ring Losses.

11

90.     On or about October 13, 2016, CUMIS denied HHFCU's Claim.

91.     By letter dated January 16, 2017, the Credit Union submitted supplemental information and documents to CUMIS and requested reconsideration of the Claim.

92.     By letter dated February 7, 2017, CUMIS reaffirmed its denial of coverage under the Bond, for the Claim.

93.     By letter dated February 23, 2017, the Credit Union sought further reconsideration of the Claim and submitted even more information and documents to CUMIS.

94.     By letter dated March 22, 2017, CUMIS, again, denied the Claim.

## FIRST COUNT
### (Breach of Contract)

95.     The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 94 of the Amended Complaint as though fully set forth herein.

96.     The Bond is a binding contract between the Plaintiff and the Defendant.

97.     Among other things, pursuant to the Bond, CUMIS agreed to indemnify HHFCU for all losses arising from the "forgery" or alteration of an "instrument."

98.     The terms "resulting," "directly" and "alteration" contained in the "Forgery Or Alteration" provision are undefined, vague and ambiguous.

99.     Since the Bond is silent as to the definition of the terms "resulting," "directly" and "alteration," they should be interpreted based on the reasonable expectations of the average insured upon reading the policy and employing common speech.

100.    The plain and ordinary meaning of "alteration," as commonly defined, is a significant change in something; especially a change in a legal instrument that alters the instrument's legal meaning or effect.

101.    The plain and ordinary meaning of "alter," as commonly defined, is "to make different without changing into something else."

102.    The plain and ordinary meaning of "alteration," as commonly defined, is "the act or process of altering."

103.    The plain and ordinary meaning of "alteration" presupposes a genuine instrument that has been fraudulently changed.

104.    The plain and ordinary meaning of "resulting," as commonly defined, is "occurring or following as the consequence of something."

105.    The plain and ordinary meaning of "directly," as commonly defined, is "in a direct way, without anything else being involved or in between."

106.    A New York State DMV title is a legal instrument customarily relied upon by a credit union, in the regular course of business, to prove ownership of collateral in connection with a member's attempt to procure a loan.

107.    Upon information and belief, the Loan Fraud members altered original DMV instruments in order to procure the loans from the Credit Union.

108.    The Credit Union, in funding the Loan Fraud loans, relied upon DMV title instruments which, upon information and belief, were instruments that were fraudulently changed from their original and genuine form by the members of the Loan Fraud Ring.

109.    The alteration of the original DMV instruments resulted in and led directly to the Credit Union funding the Loan Fraud loans.

110.    At the time the Bond was secured and at all times hereinafter mentioned, HHFCU intended the coverage and was led to believe by CUMIS that the "Forgery Or Alteration" provision of the Bond would cover a member's alteration of an instrument, presented to the

Credit Union in the form customarily relied upon in the regular course of Credit Union business.

111.    The acts of Jenkins, Gracia and Larkin, as set forth above, in altering original DMV instruments, gives rise to coverage of HHFCU's Losses under the Bond.

112.    CUMIS's denial of the Credit Union's Claim under the "Forgery Or Alteration" provision of the Bond is a breach of the contract between the parties.

113.    HHFCU has paid its premiums and complied with all of its obligations under the Bond, including fully cooperating with CUMIS in its investigation of the Loan Fraud Ring Losses.

114.    CUMIS' refusal to cover HHFCU for its Losses pursuant to the Bond constitutes a breach of contract, which has damaged the Credit Union in an amount to be determined at trial, but is not less than $134,879.00 plus prejudgment interest; together with and any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

## SECOND COUNT
### (Declaratory Judgment)

115.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 114 of the Amended Complaint as though fully set forth herein.

116.    Many of the terms and phrases contained in the Bond and specifically the "Forgery Or Alteration" provision are vague and ambiguous.

117.    At the time the Bond was secured and at all times hereinafter mentioned, HHFCU intended the coverage and was led to believe that the "Forgery Or Alteration" provision covered, *inter alia*, the alteration of an instrument, received by the Credit Union in the form customarily relied upon in the regular course of business, which alteration directly led to the Credit Union sustaining losses as a result of funding of a loan.

118.    Upon information and belief, the Loan Fraud Ring members altered original and

14

genuine DMV instruments, and presented these altered instruments in the form customarily relied upon in the regular course of business, which alteration directly led to the Credit Union sustaining losses as a result of funding of a loan.

119.    Based upon the foregoing, HHFCU is entitled to a declaration, pursuant to 28 U.S.C. §2201, that CUMIS is obligated to provide coverage to HHFCU under, *inter alia,* the Bond's "Forgery Or Alteration" provision for the full amount of HHFCU Losses arising from the Loan Fraud ring.

**THIRD COUNT**
**(Negligence)**

120.    The Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs 1 through 94 of the Amended Complaint as though fully set forth herein.

121.    At all times hereinafter mentioned, an extensive and comprehensive business relationship existed and still exists between the Plaintiff and the Defendant.

122.    The relationship between CUMIS and the Credit Union has extended continuously and exclusively since essentially the Credit Union's formation in 1940.

123.    During the multi-decade relationship between CUMIS and the Credit Union, the Defendant has been the Credit Union's trusted, strategic partner and insurance underwriter.

124.    During this exclusive and extensive relationship, HHFCU relied on CUMIS to provide the Credit Union with the insurance guidance, risk analysis, and coverage recommendations that the Credit Union needs to be successful in its operations.

125.    During this exclusive and extensive relationship, CUMIS was consistently in contact with HHFCU's staff regarding webinars and risk alerts relating to the Credit Union's business operations.

126.    For more than 20 years, CUMIS has consulted with HHFCU and provided the Credit Union with consumer direct loan documents to be used in connection with all of HHFCU's lending programs, including the automobile loans which are the subject of this action.

127.    CUMIS played an active role with HHFCU in virtually all aspects of the Credit Union's operations, including providing the Credit Union with guidance and advice in connection with certain mergers.

128.    CUMIS has several departments within its own organization from which HHFCU sought and obtained guidance, including, but not limited to:  departments that provide advice regarding compliance, marketing, security and risk.

129.    In recent years, CUMIS continued to provide HHFCU with guidance and advice (including on-site visits) through CUNA Risk Management Consultants (*e.g.* Carlos Molina), CUNA Trainers/Consultants (*e.g.* Ellen Dykeman), as well as other CUMIS employees.

130.    At all times hereinafter mentioned, the Defendant advertised its services as "[p]rotection beyond the policy" and, that in addition to providing insurance products, CUMIS offered its Bond holders help to address "the complex array of ever-changing risks and regulations."

131.    CUMIS advertised that it had "access to dozens of exclusive risk management services that help keep [credit unions] current on loss mitigation techniques and emerging risk trends."

132.    The current use of technology, including the alteration of original instruments/documents and the production of digital/electronic and photographic versions of original instruments/documents, is an emerging and ever-changing risk faced by the Credit Union.

133.    At all times hereinafter mentioned, the Credit Union engaged in periodic risk assessment meetings with the Defendant and utilized CUMIS' exclusive risk management services to avoid such emerging and ever-changing risks.

134.    The risk assessment meetings generally took place, in person, at the Credit Union, at least once a year, in or about the month of April, prior to the Bond being renewed and at various other times during the year.

135.    In recent years, HHFCU met with CUMIS representatives, including but not limited to:  Jim Langer, George Becker, John Moore, Carlos Molina, Ellen Dykeman, and other CUMIS employees.

136.    In connection with such meetings, CUMIS would require the Credit Union to complete risk assessment questionnaires and interviewed Credit Union executives regarding prospective coverage and anticipated risks.

137.    During such risk assessment meetings, the CUMIS representative and the Credit Union executives would discuss the Credit Union's operations and areas where the Credit Union faced its greatest exposure.

138.    As a result of these meetings, CUMIS was aware or should have been aware of the "ins and outs" of the Plaintiff's loan procedures and its key operations.

139     As a result of these meetings, CUMIS was aware or should have been aware that the Credit Union's portfolio consisted of a significant number of loans funded for the purpose of aiding its members in the ability to purchase new and used motor vehicles.

140.    As a result of these meetings, CUMIS was aware or should have been aware that it was customary in the regular course of business of a financial industry for a lender to be presented with photocopies, photographic or digital/electronic versions of DMV

documents/certificates of title.

141.    As a result of these meetings, CUMIS was or should have been aware that the Credit Union would rely upon photocopies, photographic or digital/electronic versions of DMV documents/certificates of title when evaluating a loan application.

142.    During these meetings, CUMIS specifically undertook an analysis of the Credit Union's business, key operations, deficiencies and largest exposures.

143.    During these meetings, and prior to the events that led up to the filing of this Amended Complaint, the Credit Union executives inquired whether HHFCU was fully protected and insisted that the Bond, and any such additional CUMIS policies, covered any and all foreseeable exposure and emerging technological risks regarding the Credit Union's operations.

144.    The Credit Union reasonably relied upon the advice and recommendations provided by CUMIS concerning the risk management services and risk assessment meetings.

145.    In performing the risk assessment analysis, it was the duty of the Defendant, its agents, servants and/or employees to use reasonable care, caution and diligence in reviewing the Credit Union's insurance coverage, understanding the Credit Union's business and advising the Credit Union as to any deficiencies in its coverage and/or where the Credit Union likely faced the greatest risk exposure.

146.    CUMIS failed to advise the Credit Union that the "Forgery Or Alteration" coverage under the Bond did not protect HHFCU from the alteration of instruments customarily relied upon in the ordinary course of business of a financial institution in funding a loan.

147.    CUMIS failed to advise the Credit Union that the "Forgery Or Alteration" coverage under the Bond did not protect HHFCU from relying upon photocopied, photographic, digital and/or electronic versions of an altered original instrument.

148.    CUMIS otherwise failed to advise the Credit Union that there was no coverage under the Bond to protect the Credit Union from being the victim of loan fraud through the production of altered versions of an original instrument.

149.    CUMIS failed to offer the Credit Union a product to cover losses stemming from loan fraud through the use of altered versions of an original instrument, or to recommend that the Credit Union secure such coverage from another insurance provider.

150.    CUMIS breached its duty to the Credit Union by failing to otherwise advise the Credit Union of the deficiencies in its Bond coverage and its risk of exposure.

151.    The Defendant, its agents, servants and employees were negligent, careless, reckless, unprofessional and/or unskilled during the course of the risk assessment meetings with the Credit Union and in otherwise providing the advertised, risk management services.

152.    The interactions between the Plaintiff and the Defendant, its agents, servants and employees during the course of the risk assessment meetings equated to significant and comprehensive interactions regarding a question of coverage.

153.    The Credit Union relied on the expertise of CUMIS in regard to any questions of coverage.

154.    The Credit Union's relied on CUMIS' expertise based upon the parties' interactions regarding any questions of coverage.

155.    The Credit Union's reliance on CUMIS' expertise based on the parties' interactions regarding any questions of coverage gave rise to a special relationship between the parties.

156.    CUMIS failed to advise or direct the Credit Union to obtain additional coverage, despite the Credit Union's reliance on the expertise of CUMIS.

157.    The extended course of dealing between the Credit Union and CUMIS further constituted a special relationship that would have put an objectionably reasonable insurance provider on notice that their advice was being sought and specifically relied upon.

158.    Due to the special relationship between CUMIS and the Credit Union, an additional duty of advisement was created on behalf of the Defendant.

159.    Due to the Defendant's special relationship with HHFCU and its additional duty of advisement, CUMIS is liable to the Credit Union for their failure to advise or direct the Credit Union to obtain additional coverage, even in the absence of a specific request.

160.    A reasonable financial institution in the Plaintiff's position, having been apprised and aware of the risks, deficiencies and exposure contained in the Bond would not have proceeded with purchasing the Bond and/or may have chosen an alternative product/insurance company.

161.    But for the Defendant's carelessness, recklessness and negligence, the Credit Union would have been properly covered by the Bond and would have recouped the Losses that resulted from the actions of the Loan Fraud members.

162.    As a result of the carelessness, recklessness and negligence of the Defendant, the Credit Union suffered damages in an amount not less than $134,879.00 plus interest; together with and any and all other appropriate legal and equitable relief pursuant to applicable state and federal law.

## DEMAND FOR RELIEF

**WHEREFORE,** the Plaintiff, HUDSON HERITAGE FEDERAL CREDIT UNION, prays for judgment against the Defendant, CUMIS, as follows:

### ON THE FIRST COUNT

(A)     awarding damages in an amount to be determined at trial, but not less than $134,879.00, plus prejudgment interest, to compensate the Plaintiff for all monetary and/or economic damages arising from the Defendant's breach of contract; and

### ON THE SECOND COUNT

(B)     declaring that HHFCU's Losses are covered under the Bond; and

(C)     declaring that CUMIS is obligated to provide coverage to HHFCU under, *inter alia,* the Bond's "Forgery Or Alteration" provision for the full amount of HHFCU Losses arising out of the Loan Fraud ring; and

### ON THE THIRD COUNT

(D)     awarding damages in an amount to be determined at trial, but not less than $134,879.00, plus interest, to compensate the Plaintiff for all monetary and/or economic damages arising from the Defendant's negligence in connection with the Third Count; and

### ON ALL COUNTS

(E)     awarding the Plaintiff the costs and disbursements it has incurred in this action, including witness and expert fees; and

(F)     awarding reasonable attorney's fees to the fullest extent permitted by law; and/or

(G)     awarding such pre and post judgment interest as is permitted by law; and

(H)     granting such other and further relief, both special and general, as this Court deems just and proper and to which the Plaintiff may be justly entitled.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff demands a

trial by jury of this action.

Dated: Tarrytown, New York
      July 19, 2017

MITCHELL POLLACK & ASSOCIATES, PLLC
Attorneys for Plaintiff, HUDSON HERITAGE
FEDERAL CREDIT UNION

By.: _____
Eileen M. Burger, Esq. (EB-3002)
Mitchell B. Pollack (MP-7591)
150 White Plains Road, Suite 310
Tarrytown, New York  10591
(914) 332-0700
(914) 332-9191 (fax)
eburger@mpollack.com
mpollack@mpollack.com